Dear Mayor Tallo:
You have requested an opinion of the Attorney General regarding the applicability of R.S. 2:135.1(E) to the City of Hammond Municipal Airport. You specifically ask whether the first clause of paragraph (E) referencing "air carrier airports" is dicta or does the clause limit any advertising and competitive bidding exemption to "air carrier airports" as defined in a subsequent part of the statute. You state that the City of Hammond Municipal Airport does not meet the definition of an "air carrier airport" and therefore if the provision in the first clause is not dicta the City of Hammond Municipal Airport would not be exempt from advertising and competitive bidding of long term lease agreements with air carriers or fixed based operators as set forth in 135.1(E).
Section 2:135.1(E), originally enacted by Acts 1978, No. 78, amended by Acts 1980, No. 181, currently provides as follows:
 It having been determined that the financial stability of the state's air carrier airports are dependant upon the ability to enter into long-term lease agreements with air carriers and fixed base operators to assure the resources necessary for the financing of improvements for, and the maintenance of, such airports and that the nature of the lease arrangements customarily entered into with such air carriers and fixed base operators at air carrier airports makes it unnecessary and undesirable that such lease agreements be subject to advertisement and competitive bidding because leased premises or improvements normally are constructed to the individual specifications of the air carriers and fixed based operators with the lease payments being designed to cover the cost of such premises or improvements, and it having been determined that public convenience and necessity so requires, it hereby is provided that, notwithstanding any other provision of law to the contrary, leases of airport operational space, facilities, equipment, and other airport land and improvements at airports may be entered into with air carriers and fixed base operators for initial terms of up to thirty years, and optional extension terms of up to an additional twenty-five years, without advertising or competitive bidding. The term "air carrier" as used herein means a party certificated under state or federal law to provide scheduled air transportation of persons, property or mail. The term "fixed base operator" as used herein means a party licensed by airport districts, airport authorities and other political subdivisions which establish or operate airports to provide servicing, repairing or furnishing supplies for aircraft or the sale, rental or leasing of aircraft or flight instruction in accordance with minimum aeronautical standards for such activities required in Subsection F of the Section. The term "air carrier airport" means a facility served by an air carrier certificated by the Civil Aeronautics Board under Section 401 of the Federal Aviation Act of 1958 (as amended) or by an air carrier operating under an exemption to Section 401 of the Act granted by the Civil Aeronautics Board for scheduled commuter airline service.
The amendment in 1980 added the definition of fixed base operator and air carrier airports. The amendments specifically changed the definition of "air carrier airport" to change from an "airport to or from which an air carrier is authorized to provide service" to now mean a "facility served by an air carrier certificated by the Civil Aeronautics Board under Section 401 of the Federal Aviation Act of 1958 ". The City of Hammond has admitted that the City of Hammond Municipal Airport does not meet this definition of an "air carrier airport". The statute specifically identifies an "air carrier airport" as having unique characteristics that make it unnecessary and undesirable that long-term lease agreements with air carriers and fixed based operators be subject to advertisement and competitive bidding.
Given this historical background, we now turn to the following rules of statutory interpretation and construction which we believe are applicable to the issue presented.
LSA-C.C. Art. 9. Clear and unambiguous law
 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
 LSA-C.C. Art. 10. Language susceptible of different meanings
 When the language of the law is susceptible of different meanings, it must be interpreted as having a meaning that best conforms to the purpose of the law.
 LSA-C.C. Art. 12. Ambiguous words
 When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.
 R.S. 1 § 3. Words and phrases; how construed
 Words and phrases shall be read with their context and according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
The word "shall" is mandatory and the word "may" is permissive.
As previously noted, Section 135.1(E) was amended in 1980 to specifically delete the 1978 definition of "air carrier airport" and substitute a new definition which requires certification by the Civil Aeronautics Board. The amendment did not change the original language of the statute that exempts defined air carrier airports from having to advertise and competitively bid long-term leases. The substance of the statute did not change. The reference in the first sentence to air carrier airports cannot be considered "dicta" especially in light of the specific legislative amendment that only changed the definition of air carrier airports and not the provision that only defined air carrier airports are granted the advertising and competitive bidding exemption.
The 1980 amendment only established a new definition of "air carrier airport". Act 181, representing the most recent amendment to Section 135.1(E), does not, in our opinion, change this status quo. The substance of the provision remains completely intact, identifying the unique nature of air carrier airports and granting such airports an exemption from advertising and competitively bidding long-term lease contract with air carriers and fixed based operators.
Guided by the rules of statutory interpretation and construction noted above, we find the provisions of Section 135.1(E), as amended, to be clear and unambiguous. Assuming, arguendo, the provisions are ambiguous, we are required to examine the text of the law in its entirety. Our jurisprudence has consistently held that, in construing a statute, one is bound to consider all parts together, giving effect to all parts, if possible, and not construing as surplusage any sentence, clause or word, if the construction can be legitimately found which will give meaning to and preserve all words of the statute. Ritchie v.Louisiana Department of Public Safety and Corrections, 595 So.2d 1158
(La.App. 1 Cir. 1991) writ denied.
R.S. 2:135(E) clearly identifies air carrier airports as having a unique problem in the ability to enter into long-term lease agreement with air carriers and fixed based operators. In order to assure financing of improvements and maintenance of the improvements the legislature has recognized the need for an exemption for defined air carrier airports of the necessity of advertising and bidding of such agreements. After identifying the issue and stating the desired remedy of providing for an exemption the statute sets forth the terms of such agreements and then provides the definition of "air carrier", "fixed based operator", and "air carrier airport". To construe the absence of the use of the term "air carrier airport" in that portion of the statute setting the terms of the agreements as somehow evidencing the intent to grant all airports the exemption, certified or not, would make meaningless the beginning of the provision and subsequent definition that specifically identifies air carrier airports, not just airports, as having the need for the exemption.
In prior opinions, this office has recognized that the Public Bid Law is prohibitory in nature, enacted in the best interest of taxpaying citizens to insure public accountability and protection in the award of such contracts. Any exception in such an act in furtherance of public policy must be narrowly construed. Attorney General Opinion No. 90-583 and 93-583.
Accordingly, it is the opinion of this office that the limiting provisions of R.S. 2:135(E) exempting only air carrier airports from the necessity of advertising and competitive bidding of long-term contracts with air carriers and fixed based operators is not dicta and is clear in its intent and purpose. The exemption provisions of R.S. 2:135(E) is only applicable to air carrier airports as defined by the statute.
We trust that this answers your inquiry.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ RICHARD L. McGIMSEY Assistant Attorney General
RPI/RLM/dam
Date Released: November 15, 2002